UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JAWANZA LEWIS,

                Plaintiff,

            - against -

CITY OF NEW YORK, P.O. GREEN, P.O.
MERIZALDE, JOHN DOE and JANE DOE,

                Defendants.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

10 CV 3266 (RJD) (LB)

DEARIE, District Judge.

      Plaintiff Jawanza Lewis claims that New York City Police Department ("NYPD") officers twice violated his civil rights in April 2009 (the "April 2009 claims"). On each occasion, the officers allegedly detained plaintiff on the street in Brooklyn, asked him whether he had a criminal record, showed him his own "mug shot" from an earlier April 2008 arrest and searched him in public, all without justification. By complaint dated July 12, 2010, plaintiff seeks compensatory and punitive damages.

      Plaintiff's April 2008 arrest was the subject of a prior lawsuit for false arrest and malicious prosecution. See Lewis v. City of New York, 08 CV 2435 (ENV) ("Lewis I"). In Lewis I, plaintiff moved to supplement his complaint to include the April 2009 claims. While that submission was pending, plaintiff agreed to a settlement in which he released all claims that had been alleged in the action.

      Pointing to the settlement and release in Lewis I, defendants in this action move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because plaintiff cannot bring claims that he previously released, defendants' motion is granted and plaintiff's complaint is dismissed with prejudice.

## Background

In the complaint in Lewis I, plaintiff alleged that on February 14, 2008, he "was at his home relaxing in his front yard porch when he was shot by some unidentified gun men." (6/08 Compl., 08 CV 2435, dkt. #1, ¶ 10.) Plaintiff was treated for injuries at nearby Brookdale Hospital, where he remained for a week. On the night of the shooting, New York City Police Detective John McGurran of the 63rd Precinct Detective Squad attempted without success to interview plaintiff at the hospital and allegedly "took away" plaintiff's clothes. (Id.) Detective McGurran then allegedly searched plaintiff's residence and retrieved belongings, including a jacket, from plaintiff's bedroom.

According to the defendants in Lewis I, Detective McGurran was assigned to investigate the incident after the police received a 911 call placed shortly after the shooting.[1] (See Defs' Opp. to Mot. to Amend, 08 CV 2435, dkt. #49.) The caller witnessed plaintiff exchanging gunfire from a window with individuals on the street. The police recovered shell casings outside plaintiff's front door and leading into plaintiff's family's apartment.

A week after his release from the hospital, on April 9, 2008, plaintiff visited the 63rd precinct to retrieve his vouchered belongings. Upon arrival, plaintiff allegedly was detained, interrogated for several hours regarding the shooting and ultimately charged with "various criminal offenses," (6/08 Compl. ¶ 14), including reckless endangerment and criminal possession

---

[1] To augment plaintiff's account, without passing upon their veracity, the Court takes judicial notice of the defendants' factual assertions offered, subject to the strictures of Rule 11, in opposition to plaintiff's motion to supplement the Lewis I complaint. For purposes of this motion, as always, the Court accepts as true the unadorned version of events appearing in plaintiff's latest complaint, which is barred on the facts alleged.

2

of a firearm. Plaintiff was released from custody two days later. The charges against plaintiff were dismissed on May 21, 2008.[2]

In June 2008, plaintiff filed federal civil rights claims for false arrest, excessive force and malicious prosecution, along with state law claims for intentional infliction of emotional distress and negligence, against the City of New York (the "City") and Detective McGurran. In December 2008, plaintiff amended his complaint to name eight additional police officers as defendants. In May 2009, by consent of the parties, plaintiff amended his complaint once more to add claims for conspiracy and cruel and unusual punishment.

In October 2009, while the parties were in the midst of discovery, plaintiff moved to supplement his complaint to include claims against Officers Green and Merizalde, the individual defendants to this action. In the proposed supplemental complaint, plaintiff alleged that on April 20, 2009, Officer Green detained plaintiff on the street without provocation, asked plaintiff whether he had ever been arrested and "[g]leefully wav[ed]" around plaintiff's mug shot taken in connection with the April 2008 arrest.[3] (10/09 Supp. Compl., 08 CV 2435, dkt. #50-2, ¶ 16.) Plaintiff also alleges that on April 30, 2009, Officer Merizalde and three unidentified officers did substantially the same. Plaintiff further asserts that the officers on each occasion unlawfully searched plaintiff in the presence of family, neighbors and acquaintances.

Defendants opposed plaintiff's motion to supplement the complaint in Lewis I on the ground that adding unrelated claims and defendants at such a late juncture would unduly complicate the action. Defendants argued, moreover, that they would likely be entitled to

---

[2] The Lewis I defendants contended that the charges were dismissed after the 911 caller, who had identified plaintiff from a photo array, declined to testify. According to the defendants, the witness's change of heart is amply documented within police and prosecutorial files.

[3] Plaintiff argues that the latter conduct violated his civil rights because Section 160.50 of New York's Criminal Procedure Law mandates the destruction of post-arrest mug shots of individuals whose cases are dismissed.

3

summary judgment regarding plaintiff's original claims given the existence of probable cause for plaintiff's April 2008 arrest. Plaintiff countered that "the proposed supplemental Complaint ha[d] a strong relationship to the original Complaint" due to the NYPD's alleged failure to destroy plaintiff's mug shot, and "that the entire controversy should be litigated as a unit." (Pl's Reply in Support of Mot. to Amend, 08 CV 2435, Dkt. #47, at 3, 6.)

While the motion to supplement was pending, the parties entered into a Stipulation and Order of Settlement and Discontinuance, filed on February 10, 2010 (the "Stipulation"). The Stipulation directed the City of New York to pay plaintiff $30,000 in exchange for plaintiff's "releas[ing] all defendants and any present or former employees or agents of the City of New York and the New York City Police Department from any and all liability, claims, or rights of action that have or could have been alleged by plaintiff in this action." (Stip., 08 CV 2435, dkt. #54, ¶ 2.) A terse six paragraphs, the written Stipulation "contains all the terms and conditions agreed upon by the parties" and cannot be modified except by written agreement. (Id. ¶ 6.) On February 16, 2010, Lewis I was dismissed with prejudice according to the Stipulation's terms. (See id. ¶ 1.)

Five months after entry of the Stipulation, plaintiff reintroduces the April 2009 claims against the City and Officers Green and Merizalde. In his latest complaint, filed on July 16, 2010, plaintiff again asserts that he "was at his home relaxing in his front yard porch when he was shot by some unidentified gun men," after which plaintiff was arrested and then released. (Compl., dkt. #1, ¶¶ 9-11.) Forgoing any claim arising directly from the shooting, plaintiff repeats nearly verbatim the allegations regarding his April 2009 encounters with Green, Merizalde and the putatively intact mug shot. Having answered the complaint, defendants move

4

for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[4] For the reasons given below, defendants' motion is granted.

## Discussion

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 522 (2d Cir. 2006). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (internal quotation marks omitted). In deciding at this stage whether prior litigation bars a complaint, a court may consider "the court's own records." Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992); see also Henry v. City of New York, 2007 WL 1062519, at *2 (E.D.N.Y. 2007) (taking judicial notice of prior stipulation of settlement in deciding Rule 12(c) motion).

In their Rule 12(c) submission, defendants raise two defenses to suit. First, defendants argue that the general release in Lewis I is broad enough to include the April 2009 claims involving Officers Green and Merizalde, even though these claims appeared only in a proposed supplemental complaint. Second, defendants argue that the February 2010 settlement bars reassertion of the April 2009 claims through principles of claim preclusion. Both defenses may

---

[4] Adhering to the Court's Individual Practices, defendants filed a letter outlining the bases for their motion and plaintiff filed a letter in response. At a pre-motion conference held on January 21, 2011, to mitigate expense and delay, the parties agreed that defendants' motion would be decided on these submissions.

be suitable grounds for judgment on the pleadings.[5] See, e.g., Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 372-73 (S.D.N.Y. 1999). Defendants are correct on one count: although claim preclusion does not apply on these facts, the general release within the Stipulation mandates the dismissal of plaintiff's complaint.

## Claim preclusion

Defendants argue that the Lewis I settlement, pursuant to which the action was dismissed with prejudice, precludes the current claims against the City and Officers Green and Merizalde. That contention is incorrect. The doctrine of res judicata, known equally as claim preclusion, "provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action." Channer v. Dep't of Homeland Sec., 527 F.3d 275, 279 (2d Cir. 2008). "[A] party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. NYC Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000).

The provision in the Stipulation dismissing Lewis I with prejudice satisfies the "final judgment" element of claim preclusion. See, e.g., Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002) ("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes."). The parties' dispute focuses on the third requirement – that is, whether the cause of action is the same, or whether plaintiff's

---

[5] Although release and res judicata are affirmative defenses that must be pled in an answer, see Fed. R. Civ. P. 8(c), defendants raise only res judicata, rather than release, in their answer on file. Nonetheless, defendants promptly assert both defenses in their Rule 12(c) submission, see Smith v. Guilford Bd. of Educ., 226 F. App'x 58, 65 (2d Cir. 2007), filed within the 21-day period for amending their answer of right under Rule 15(a)(1)(A).

claims "were, or could have been, raised in the prior action."[6] Monahan, 214 F.3d at 285. For defendants' argument to succeed, either (i) plaintiff must have been required to allege the April 2009 claims in his May 2009 amended complaint in Lewis I, or (ii) the proposed October 2009 supplemental complaint had to become part of the "action" for claim preclusion purposes upon submission for court approval. Neither is correct, as discussed below.

*The May 2009 Complaint*

After commencing Lewis I in June 2008, plaintiff was not required to update his complaint to include events occurring afterward. The doctrine of "claim preclusion . . . does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000) ("The crucial date is the date the complaint was filed."). "Accordingly, if, after the first suit is underway, a defendant engages in actionable conduct, plaintiff may – but is not required to – file a supplemental pleading setting forth defendant's subsequent conduct." Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1987). Had plaintiff not amended or otherwise supplemented his initial complaint in Lewis I, therefore, the analysis would end here. But plaintiff amended his complaint twice, with the latter amendment occurring in May 2009, a month after the alleged encounters with Officers Green and Merizalde. Thus, the April 2009 claims are precluded if plaintiff should have raised them in his May 2009 amended complaint.

---

[6] Plaintiff also argues that the parties to the actions are different. With respect to Officers Green and Merizalde, plaintiff likely is correct; the weight of authority holds that public employees sued in their individual capacities are not in privity with their employers, or with each other, for res judicata purposes. See generally 18A Wright, Miller & Cooper, Federal Practice and Procedure § 4458, at 567 (2d ed. 2002) ("[A] judgment against a government or one government official does not bind a different official in subsequent litigation that asserts a personal liability against the official . . . ."). Because the third element of claim preclusion is not satisfied, the Court does not pass upon this issue.

7

Whether a party should have raised a claim in an earlier lawsuit "depends in part on whether the same transaction of series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." NLRB v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983). In addition, a court must "look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001). "Also dispositive to a finding of preclusive effect[] is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action." Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 874 (2d Cir.1991) (internal quotation marks omitted).

Guided by these standards, plaintiff had no obligation to raise the April 2009 claims in his May 2009 amended complaint in Lewis I. Plaintiff's initial June 2008 complaint and May 2009 amendment both regard his arrest and arraignment on charges related to a February 2008 shooting. The April 2009 claims arise from an alleged procession of discrete indignities, including unjustified detentions and searches, suffered at the hands of police officers uninvolved in plaintiff's earlier arrest. Indeed, "the events giving rise to the two proceedings occurred at different places," almost a year apart, and "concerned different employees engaged in different acts." United Techs., 706 F.2d at 1260 (finding claims not precluded for these reasons); see also Campbell v. City of New York, 2004 WL 943570, at *3 (S.D.N.Y. 2004) (holding that unrelated arrests give rise to separate claims for res judicata purposes). That plaintiff strings the events together with a mug shot[7] does not mean that plaintiff must have raised claims regarding the

---

[7] The mug shot features prominently only in plaintiff's claim for municipal liability against the City. (See Compl. ¶¶ 44-46.)

8

alleged April 2009 searches and seizures in Lewis I, any more than if the mug shot had promptly been destroyed.

At the pre-motion conference before this Court, defendants argued that plaintiff should be held to his characterizations in Lewis I that "the proposed supplemental Complaint has a strong relationship to the original Complaint" and "that the entire controversy should be litigated as a unit." (Pl's Reply at 3, 6.) To the contrary, plaintiff in his submission quotes defendants' conclusion from Lewis I that the April 2009 claims "are so far removed from the original complaint" that they "should be filed as a separate action." (See Defs' Opp. at ix.) The irony in the parties' swapping their earlier stances, although predictable, is of no moment. The test for res judicata is an objective one, concerned with the binding effect of a judgment upon entry. It does not hinge on parties' subjective views about whether claims may permissively be joined in the same action. To the contrary, where proposed claims have not gained entry into a prior action, "the normal claim preclusion analysis applies and the court must assess whether the second suit raises issues that should have been brought in the first." Citibank, 226 F.3d at 139-40. For the reasons discussed, such is not the case here.

*The October 2009 Proposed Supplemental Complaint*

Defendants argue that claim preclusion applies regardless of the April 2009 claims' connection, or lack thereof, to plaintiff's April 2008 arrest and arraignment. Because plaintiff mentioned the April 2009 claims in his proffered supplement in Lewis I, defendants contend, the claims in fact were "raised in the prior action." Monahan, 214 F.3d at 285. Despite this argument's literalist appeal, the Court rejects the notion that claims become part of an "action" for res judicata purposes by virtue of their mere inclusion within a proposed supplemental complaint.

9

A supplemental complaint may set forth "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," Fed. R. Civ. P. 15(d), as long as "the supplemental facts connect it to the original pleading," Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 2995). Given this permissive standard, claim preclusion applies only when a litigant previously had "an opportunity to litigate the merits of each of his proposed supplemental claims."[8] Flaherty v. Lang, 199 F.3d 607, 616 (2d Cir. 1999). In this Court's view, that did not occur in Lewis I.

In support of their argument, defendants cite to Magistrate Judge Bloom's Report and Recommendation ("R&R") in Harry v. Morgigno, 07 CV 4759 (SJF) (dkt. #47), adopted in full by the district court on April 22, 2009. The plaintiff in Harry alleged civil rights violations stemming from a May 2005 arrest. The plaintiff amended his complaint to add claims arising from an October 2005 arrest involving one of the same officers. For whatever reason, the plaintiff amended his complaint yet again, deleting any mention of the October 2005 arrest and asserting, once more, claims relating to the May 2005 arrest alone. The parties then settled, with the plaintiff dismissing the action with prejudice and releasing all claims that "'ha[d] or could have been alleged by plaintiff in th[e] action.'" (R&R at 4.) A month later, the plaintiff commenced a brand new action regarding his October 2005 arrest. The district court dismissed the later complaint on the basis of res judicata.[9]

This outcome in Harry represents "[a] straightforward application of the well-settled principles of res judicata." Samuels v. N. Telecom, Inc., 942 F.2d 834, 836 (2d Cir. 1991).

---

[8] For example, if a court denies leave to file a supplemental complaint on the ground that it fails to state a claim, then the plaintiff may be precluded from relitigating the validity of the proposed supplemental claims in a later action. See Legnani v. Alitalia Aeree Italiane, S.P.A., 400 F.3d 139, 141-42 & n.2 (2d Cir. 2005).

[9] The court held alternatively that the plaintiff had released the claims, a holding which this Court finds persuasive.

10

Harry reaffirms that once claims are included within a validly filed complaint, those claims become part of an "action" for res judicata purposes.[10] The same is true if the claims are withdrawn or if their "inclusion in the complaint makes little logical sense." Id. at 837 ("Res judicata may not be avoided on the basis of overbroad pleading appearing in [an] initial complaint."). In Harry, the plaintiff withdrew a claim specifically pleaded in an amended complaint which the district court had accepted into the action. The withdrawn claim's one-time inclusion within the operative complaint "took on heightened significance when the parties agreed to dismiss with prejudice." Samuels, 942 F.2d at 837; see also McNellis v. First Fed. Sav. & Loan Ass'n of Rochester, 364 F.2d 251, 256 (2d Cir. 1966) (affirming that reassertion of a claim appearing expressly within a prior complaint "present[s] a classic case for applying the salutary policies behind the res judicata doctrine"). That significance, namely, is prevention of the claim's resurfacing in a future lawsuit.

By contrast, the April 2009 claims never officially became a part of Lewis I. Having yet to rule on plaintiff's motion when the parties settled, the district court had no occasion to rule on the proposed supplemental claims. Accordingly, the claims were "never before the court in a realistic sense." McNellis, 364 F.2d at 256 (refusing to apply claim preclusion or collateral estoppel given "the ambiguous disposition . . . of the proposed supplemental complaint" in a preceding state action). In short, no rights or interests were established with respect to the April 2009 claims in Lewis I, and thus there is nothing that litigation of those claims in this action would impair.

---

[10] Again, for preclusion purposes, "[t]he crucial date is the date the complaint was filed." Citibank, 226 F.3d at 139 (emphasis added). Civil procedure rules likewise embody the notion that a claim becomes part of an action when filed. See Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

11

### Contractual release

Notwithstanding the above analysis, the April 2009 claims are barred by the general release in Lewis I. In addition to dismissing the action with prejudice, plaintiff agreed without exception "to release all defendants and any present or former employees or agents of the City of New York and the [NYPD] from any and all liability, claims, or rights of action that have or could have been alleged by plaintiff in this action." (Stip. ¶ 2.) As a preliminary matter, contrary to plaintiff's assertions, "[t]he mere similarity between a portion of the release provision and a common judicial formulation of res judicata does not compel the Court to interpret the release provision as co-extensive with res judicata." Wang v. Paterson, 2008 WL 5272736, at *5 (S.D.N.Y. 2008). Naturally, a claim may be released without having previously been litigated. Indeed, plaintiff's interpretation – that the release merely duplicates the dismissal with prejudice – "would render the release provision redundant." Id. at *5 n.8.

The significance of the release, like that of any contractual provision, must be assessed independently and in accordance with its plain and unambiguous language. See, e.g., Torres v. Walker, 356 F.3d 238, 246 (2d Cir. 2004); Shklovskiy v. Khan, 273 A.D.2d 371, 372 (2d Dep't 2000); see also Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999) ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law."). "Federal courts have articulated a strong policy in favor of enforcing settlement agreements and releases." Levine v. Board of Educ., 1998 WL 386141, at *2 (2d Cir. 1998) (table decision) (citing Ruskay v. Waddell, 552 F.2d 392, 398 (2d Cir. 1977)).

Applying the release to the April 2009 claims is straightforward. The release extends to "all defendants" in Lewis I, including the City, and to "any present or former employees or agents of" the NYPD, including Officers Green and Merizalde. (Stip. ¶ 2.) These defendants are

released "from any and all liability, claims, or rights of action that have or could have been alleged by plaintiff" in the prior action. (Id.) This includes the April 2009 claims, which plaintiff in fact alleged, or attempted to allege, in Lewis I. Cf. Wang, 2008 WL 5272736, at *5 (holding that similar language in a release barred subsequent litigation of supplemental claims that arose prior to settlement but which had not been pled).

Plaintiff offers three arguments in an effort to avoid the release's plain language. First, plaintiff submits that the Lewis I court, had it reached the issue, would have denied the supplemental claims entry into the action. This Court, however, need not speculate about whether plaintiff could have or should have raised the April 2009 claims in Lewis I when plaintiff in fact raised the claims.

Second, plaintiff contends that the Lewis I settlement discussions did not contemplate the release of claims against officers Green and Merizalde, which the parties understood would be brought separately. "The subjective intent that [plaintiff's counsel] asserts he had while signing the release reinforces why courts focus on the objective language of contracts." Brodeur v. City of New York, 2005 WL 1139908, at *5 (E.D.N.Y. 2005); see Thailer v. LaRocca, 174 A.D.2d 731, 733 (2d Dep't 1991) ("Where . . . the language with respect to the parties' intent is clear and unambiguous, it will be given effect, regardless of one party's claim that he intended something else."). Plaintiff's revelations of his own subjective understanding do not override the Stipulation's broadly worded second paragraph, which "constitutes a clear and unambiguous manifestation of an intent to release" all claims that had been alleged so far in the action.[11]

---

[11] The Court may likewise deny plaintiff's attempt to add terms to the Stipulation "because the agreement contains a valid general merger clause." N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 45 (2d Cir. 1999). Paragraph Six provides that the written Stipulation "contains all the terms and conditions agreed upon by the parties . . . regarding the subject matter" addressed. (Stip. ¶ 6.)

13

Kay-R Elec. Corp. v. Stone & Webster Const. Co., 23 F.3d 55, 58 (2d Cir. 1994). If plaintiff intended to exclude the April 2009 claims from that paragraph's ambit, "all he had to do was say so, and insist on a release that did not bargain such a claim away. He did not do so then, and is thus precluded from bringing this action now." Brodeur, 2005 WL 1139908, at *5.

Third, plaintiff argues that defendants acquiesced in this action by conducting an examination of plaintiff's claims in March 2010 pursuant to General Municipal Law Section 50-h. "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999). Section 50-h allows the City, upon receiving such a notice, to examine the plaintiff upon request regarding the claims included within the notice. "Generally, compliance with a municipality's timely request for a General Municipal Law § 50-h examination is a condition precedent to commencement of an action by a claimant and noncompliance is a ground for dismissal." S. Tier Plastics, Inc. v. County of Broome, 53 A.D.3d 980, 980 (3d Dep't 2008) (internal quotation marks omitted).

By preserving their rights under this section, defendants did not waive their ability to enforce the bargained-for terms of the Stipulation which terminated Lewis I. The subsequent actions of separate defense counsel for the City no more narrow the release than do the current protestations of separate counsel for plaintiff, who admitted at the pre-motion conference that, had he represented plaintiff at the time, he would not have sought to add the April 2009 claims to Lewis I.[12]

## Conclusion

On the one hand, res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s]

---

[12] Although the identity of plaintiff's counsel has changed, counsel's address on the complaint filed in this action is identical to that appearing on the supplemental complaint in Lewis I.

14

reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980). On the other hand, contract law seeks to hold parties to the letter of their bargains. Each promotes predictability; the latter achieves that goal here. Given the broad release to which plaintiff previously agreed, defendants' motion for judgment on the pleadings is granted and plaintiff's complaint is dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
July 2011

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge